# 21-2901

**United States Court of Appeals *for the* Second Circuit**

TORREY TERRIAL TOWNSEND,

PLAINTIFF-APPELLANT

VS.

FIRST STUDENT

DEFENDANT-APPELLEE

AND

CSEA SEIU LOCAL 2001,

*DEFENDANT*

## APPELLEE'S BRIEF

On Appeal From Judgment
and Rulings of the
United States District Court
for the District of
Connecticut

Maura A. Mastrony
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street – Suite 300
New Haven, CT 06510
(203) 974-8700
Attorneys for Defendant-Appellee
First Student

## FRAP 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee, First Student, Inc., through its attorneys, Littler Mendelson, P.C., hereby discloses that it is a wholly-owned subsidiary of FirstGroup America Holdings, Inc. and that no other entity owns 10% or more of First Student, Inc.'s stock.

First Student, Inc. further discloses that FirstGroup America Holdings, Inc. is a wholly-owned subsidiary of Laidlaw Transportation, Inc., which is an indirect, wholly-owned subsidiary of First Student Intermediate Holding, LLC., which is an indirect, wholly-owned subsidiary of EQT Infrastructure V Investments S.á.r.l.

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF ISSUES PRESENTED.................................................................. 1

COUNTER STATEMENT OF THE CASE ............................................................. 2

    I.     COUNTER STATEMENT OF FACTS ............................................. 2

          A.    Plaintiff's Employment with and Termination from First Student ........... 2

          B.    Procedural History ........................................................... 5

SUMMARY OF ARGUMENT .................................................................. 8

ARGUMENT .................................................................................... 9

    I.     THE DISTRICT COURT'S GRANTING OF THE MOTION FOR SUMMARY JUDGMENT SHOULD BE AFFIRMED....................................... 9

          A.    The District Court properly granted summary judgment regarding Plaintiff's Claim for Violation of Conn. Gen. Stat. § 31-51m where she conceded that it was brought outside of the applicable statute of limitations. ........................................................ 9

          B.    The Court properly granted summary judgment with respect to Plaintiff's discrimination claims pursuant to Title VII and § 1981 where she failed to meet her burden of showing that her termination occurred under circumstances giving rise to an inference of discrimination. ........................................... 10

          C.    Plaintiff's arguments on appeal regarding violation of the CBA and retaliation are meritless, and, even if the arguments are meritorious, Plaintiff should be precluded from raising them for the first time on appeal.................................................... 16

                i.    Plaintiff's claim that her termination was improper and in violation of the collective bargaining agreement is preempted by federal law. ........................................... 17

                ii.    Plaintiff's arguments regarding retaliation are irrelevant given the fact that she failed to assert a claim for retaliation....... 19

CONCLUSION.............................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allis–Chalmers Corp. v. Lueck*,
    471 U.S. 202 (1985)................................................................................................19

*Bey v. City of New York*,
    999 F.3d 157 (2d Cir. 2021)..........................................................................10, 11

*Brady v. Office of the Sergeant of Arms*,
    520 F.3d 490 (D.C. Cir. 2008) ...............................................................................18

*Harrison v. Republic of Sudan*,
    838 F.3d 86 (2d Cir. 2016)...............................................................................17, 20

*Jackson v. AFSCME Local 196*,
    2010 WL 1286771 (D. Conn. March 29, 2010) (*Hall, J.*) ..................11, 12, 13, 14

*Macoas Soto v. Core–Mark Int'l, Inc.*,
    521 F.3d 837 (8th Cir.2008) ..................................................................................18

*McDonnell Douglas. Broich v. Incorporated Village of Southampton*,
    462 Fed. Appx. 39 (2d Cir. 2012) .........................................................................11

*Michael v. Caterpillar Fin. Servs. Corp.*,
    496 F.3d 584 (6th Cir. 2007) .................................................................................18

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*,
    769 F.3d 807 (2d Cir. 2014).....................................................................................9

*Schwimmer v. Sony Corp. of America*,
    637 F.2d 41 (2d Cir. 1980).....................................................................................17

*Sista v. CDC Ixis N. Am., Inc.*,
    445 F.3d 161 (2d Cir. 2006)................................................................................9, 10

*Vera v. Saks*,
    335 F.3d 109 (2d Cir. 2003)...................................................................................19

*Vintero Corp. v. Corporacion Venezolana de Fomento*,
    675 F.2d 513 (2d Cir. 1982)...................................................................................17

*White v. Connecticut Dept. of Children and Families*,
    544 F.Supp.2d 112 (D. Conn. 2008) ......................................................................11

*Zeyer v. Board of Educ.*,
     98 F.Supp.3d 425 (D. Conn. 2015) ........................................................19

**Statutes**

Title VII, 42 U.S.C. § 1983 ...................................................5, 6, 7, 11, 16

42 U.S.C. § 1981 ...................................................................6, 7, 11, 16

42 U.S.C. § 1985 ..................................................................................6

Conn. Gen. Stat. § 31-51q ..................................................................7

Conn. Gen. Stat. § 31-51m ................................................7, 8, 9, 10

Labor Management Relations Act .....................................................18

**Other Authorities**

Fed. R. Civ. P. 56(a) .........................................................................10

## **STATEMENT OF ISSUES PRESENTED**

1.      Did the Court properly determine that Plaintiff's claim pursuant to Connecticut General Statutes § 31-51m failed, after Plaintiff conceded that it was filed outside of the applicable statute of limitations?

2.      Did the Court properly determine that Plaintiff's discrimination claims failed because she did not present any evidence to satisfy the fourth prong of a *prima facie* case of race discrimination?

3.      Should Plaintiff be precluded from raising for the first time on appeal arguments regarding a breach of the collective bargaining agreement and retaliation?

4.      Even if the Court can consider Plaintiff's argument regarding a breach of the collective bargaining agreement, is such an argument preempted by federal law?

5.      Even if the Court can consider Plaintiff's arguments regarding retaliation, is Plaintiff precluded from making such arguments given that she has not asserted a cause of action for retaliation in this matter?

1

## <u>COUNTER STATEMENT OF THE CASE</u>

**I.    COUNTER STATEMENT OF FACTS**

    **A.    <u>Plaintiff's Employment with and Termination from First Student</u>**

Plaintiff Torrey Townsend was employed by Defendant First Student as a school bus driver commencing September 24, 2012. (SA[1] 001, at ¶ 1)  Plaintiff was terminated from her position with First Student on November 17, 2017, due to having committed several serious violations of First Student's policies. (SA 004, at ¶ 14)  On October 25, 2017, the Transportation Director for the City of New Haven, Teddy Barros, called First Student to relay a complaint that had come in from Sheridan School in New Haven.  (SA 004, ¶ 15)  The school had complained about a driver who was late to arrive to the school, was aggressively honking the horn outside of the school, and was very rude to one of the school's security guards.  *Id*.

Based on the bus number that the school disclosed, as well as the timing of the driver's arrival, First Student concluded the bus was driven by Plaintiff and pulled the videotape from the bus driven by Plaintiff from that day in order to investigate the complaint.  (SA 004, at ¶ 15)  First Student Assistant Manager Vasil Chiacu reviewed the videotape from Plaintiff's bus from October 25, 2017 in depth. (SA 004-005, at ¶ 16)  The videotape showed that Plaintiff called Dispatch at 6:57

---

[1] References to "SA" are to the Supplemental Appendix submitted by Defendant. Plaintiff did not solicit Defendant's consent and/or input regarding the appendix she filed, thus necessitating a separate appendix to accompany Defendant's brief.

a.m. and stated that someone had intentionally poured water on the driver's seat and in other parts of the bus. *Id*. Subsequently, at 7:11 a.m., Plaintiff called dispatch to say that she was going home to change her wet pants and that she would be running late. She also stated that she was home. *Id*. Then, Plaintiff exited the bus at the police substation, and at 7:18, Plaintiff is seen back on the bus with a police officer. *Id*. Plaintiff pointed out to the police officer that her seat was wet, to which he responded that it had rained the previous night. *Id*. Plaintiff then stated to the officer, "Your observation is very, very important. Make sure you write it correctly, not your opinion. Because I will be going to A.I. [sic]. I have been the one going thorough this, don't go with your assumptions because your assumptions will make you a poor cop." *Id*.

In addition, the videotape shows that Plaintiff committed several violations of First Student policy. First, Plaintiff failed to complete a pre-trip inspection of her bus. (SA 005, at ¶ 17) In addition, Plaintiff put the bus in reverse and backed the bus up without beeping the horn first. *Id*. Plaintiff also went to a police substation, exited the bus at the police station and left the key in the ignition without performing a child check. *Id*. Plaintiff stated at her deposition that she may have gotten out of the bus and left the key in the ignition: "I'm not sure. I might have. It's possible." *Id*. Further, Plaintiff went off route to the police station without authorization to do so. *Id*.

In addition to reviewing the videotape, Location Manager Mr. DeMaio met with Plaintiff to obtain her version of what had occurred. (SA 006, at ¶ 19) First Student was unable to reach Plaintiff on October 25, 2017, and therefore met with her on October 26th instead. *Id*. Plaintiff admitted to Mr. DeMaio during their meeting on October 26, 2017 that she did not conduct a pre-trip inspection of the bus, though later denied that in her deposition. (SA 005, at ¶ 20) After the meeting, First Student placed Plaintiff on paid administrative leave while it completed its investigation. (SA 006, at ¶ 22) Although First Student tried to reach Plaintiff via telephone multiple times after completing its investigation, it was unable to do so. (SA 007, at ¶ 23) Moreover, Plaintiff did not reach out to First Student to obtain the status of the investigation. *Id*.

Given the videotape evidence and Plaintiff's admissions, on November 17, 2017, Mr. DeMaio sent a letter to Plaintiff informing her that her employment was being terminated based on the following serious violations of First Student policy:

- Intentionally failing to perform a pre-trip inspection

- Leaving a vehicle unattended with key in ignition and running

- Not performing child check

- Unsafe backing and operation of the bus

- Unauthorized stop

(SA 007, at ¶ 24)

4

Mr. DeMaio expanded upon these reasons during his deposition. As noted above, he stated that Plaintiff admitted to him on October 26, 2017, during their meeting, that she failed to complete the pre-trip inspection. (SA 007, at ¶ 25) Mr. DeMaio also explained that the videotape showed that Plaintiff left her bus with the key in it, in order to circumvent the child check requirement, when she went to the police station to meet with the police officer. *Id*. Mr. DeMaio also noted that the videotape showed that Plaintiff failed to perform the child check procedure. *Id*. With respect to unsafe backing and operation of the bus, Mr. DeMaio stated that the videotape showed that Plaintiff had backed up several times without honking the horn, "which [a driver] is supposed to do." *Id*. Finally, with respect to the unauthorized stop, Mr. DeMaio testified that was based on the fact that Plaintiff went to the police substation and conducted personal business on company time without informing First Student by calling into Dispatch that she was doing so. *Id*.

Plaintiff's union grieved her termination. (SA 008, at ¶ 26) However, the Union subsequently withdrew the grievance after determining that there was no merit to Plaintiff's claim. *Id*.

B. <u>Procedural History</u>

Plaintiff filed the present lawsuit against Defendant First Student on October 10, 2018 and alleged two causes of action in violation of Title VII. *See* Docket

Sheet, Document 1 (AA[2] 8)  Subsequently, Plaintiff filed an Amended Complaint on November 8, 2018 against First Student and Defendant CSEA SEIU Local 2001, alleging violations of Title VII, 42 U.S.C. § 1983, 42 U.S.C. § 1981, 42 U.S.C. § 1985, the Fourteenth Amendment to the United States Constitution, the Fifth Amendment to the United States Constitution, an ordinance of the City of New Haven and Connecticut General Statues Chapter 561. *Id.*, Document 14 (AA 9) When Plaintiff filed her original complaint on October 10, 2018, she simultaneously filed a request to proceed *in forma pauperis*. *Id.*, Document 2 (AA 8)  Her request was referred to Magistrate Judge Richardson, who recommended dismissal of all claims alleged under 42 U.S.C. §1983, 42 U.S.C. §1985(3) and 42 U.S.C. §1981. *Id.*, Document 16. (AA 9)

Because the Amended Complaint was incredibly unclear, Defendants moved for a more definite statement, which was granted on December 12, 2019. *See* Docket Sheet, Documents 30 and 38 (AA 11-12) Plaintiff was given until January 10, 2020 to file an Second Amended Complaint.

On March 17, 2020, Attorney Charles Eggert filed an appearance for Plaintiff and then filed an Second Amended Complaint alleging the following causes of action against First Student: (1) Discrimination in violation of 1981; (2) Violation

---

[2] References to "AA" are to the Appellant's Appendix.

of Title VII; (3) Violation of Conn. Gen. Stat. § 31-51m; (4) Violation of Fifth Amendment right to due process; (5) Violation of the Equal Protection Clause of the Fourteenth Amendment; and (6) Violation of Conn. Gen. Stat. § 31-51q. (Document 41) Plaintiff also alleged several causes of action against the Union of which she was a member, CSEA SEIU Local 2001 ("the Union"). *See* Docket Sheet, Document 42 (AA 13).

On June 8, 2020, Plaintiff filed a Revised Complaint (AA 42-71), which is virtually identical to the Second Amended Complaint filed on March 18, 2020. On July 22, 2020, the Union filed a Motion to Dismiss the entire complaint, and on July 23, 2020, First Student filed a Motion to Dismiss Counts Four, Five and Six of the Revised Complaint, both of which were granted on November 17, 2020. *See* Docket Sheet, Documents 75 and 76 (AA 17).

On March 8, 2021, Defendant filed a Motion for Summary Judgment, seeking judgment on all remaining counts of the operative complaint – i.e., Counts One (Discrimination in Violation of § 1981), Two (Violation of Title VII) and Three (Violation of Conn. Gen. Stat. § 31-51m). (SA 121-151) On May 7, 2021, Plaintiff filed an Opposition to the Motion for Summary Judgment. (SA 152-166) The Court, *Bryant, J.*, granted Defendant's Motion for Summary Judgment in its entirety on October 14, 2021. (AA 17-41).

## SUMMARY OF ARGUMENT

Plaintiff's appeal of the District Court's granting of the Motion for Summary Judgment is meritless. She has not raised a single argument as to why the District Court's decision was incorrect – because she cannot. The District Court properly accepted Plaintiff's concession that her claim pursuant to Conn. Gen. Stat. § 31-51m was abandoned. Further, the District Court properly found that Plaintiff failed to meet her burden of showing how Defendant's decision to terminate Plaintiff's employment was not made under circumstances giving rise to an inference of racial discrimination and that Defendant's denial of her request for air brake training was not discriminatory.[3] Indeed, Plaintiff pointed to no evidence to permit the District Court to conclude that there was a genuine issue of material fact regarding whether her termination occurred under circumstances giving rise to an inference of racial discrimination. Instead, to support an inference of discrimination, she simply pointed to prior incidents that had no relation to – or temporal proximity to – her termination, Defendant's use of ZONAR[4] and Defendant's alleged denial of her due process during the investigation leading to her termination. As the District Court properly concluded, none of this purported evidence enabled her to meet her burden

---

[3] Although the District Court also concluded that Defendant's denial of Plaintiff's request for a morning-only schedule was not discriminatory, Plaintiff has not appealed that decision here, as she has not addressed it in her brief.

[4] ZONAR is an automated EVIR system through which vehicle inspections are conducted by First Student drivers. (SA 003, at ¶ 12)

of showing that her termination occurred under circumstances giving rise to an inference of discrimination. Nor has Plaintiff pointed to any errors made by the District Court in its decision.

Further, Plaintiff has now raised *for the first time on appeal* arguments regarding a violation of her collective bargaining agreement ("CBA") and retaliation. Neither argument should be considered here, as they are being raised for the first time on appeal, and they are meritless at any rate. Under these circumstances, the District Court's decision granting summary judgment should be affirmed.

## **ARGUMENT**

## I. **THE DISTRICT COURT'S GRANTING OF THE MOTION FOR SUMMARY JUDGMENT SHOULD BE AFFIRMED.**

A. The District Court properly granted summary judgment regarding Plaintiff's Claim for Violation of Conn. Gen. Stat. § 31-51m where she conceded that it was brought outside of the applicable statute of limitations.

The Second Circuit reviews a district court's decision to grant summary judgment *de novo*, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 168–69 (2d Cir. 2006); *see also Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 815 (2d Cir. 2014). Moreover, "[s]ummary judgment is appropriate only if 'there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021) (quoting Fed. R. Civ. P. 56(a)).

Here, the District Court properly granted summary judgment on Plaintiff's claim for violation of Conn. Gen. Stat. § 31-51m because Plaintiff conceded that she had brought the claim well outside of the ninety-day statute of limitations. (AA 32) Thus, there can be no dispute that summary judgment was properly granted as to this claim.[5]

B.  The Court properly granted summary judgment with respect to Plaintiff's discrimination claims pursuant to Title VII and § 1981 where she failed to meet her burden of showing that her termination occurred under circumstances giving rise to an inference of discrimination.

As noted, the Second Circuit reviews a district court's decision to grant summary judgment *de novo*, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor. *See Sista v. CDC Ixis N. Am., Inc.*, *supra*, 445 F.3d at 168. Moreover, "[s]ummary judgment is appropriate only if 'there is no genuine

---

[5] It does not appear that Plaintiff has appealed the District Court's decision as to her claim pursuant to Conn. Gen. Stat. § 31-51m. However, in an abundance of caution, Defendant has included an argument in favor of affirmation of this decision.

dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bey v. City of New York*, *surpa*, 999 F.3d at 164.

Plaintiff claimed that she was discriminated against on the basis of her race in violation of Title VII and Section 1981 when she was terminated. Plaintiff's claims under Title VII and Section 1981 are both evaluated under a three-step burden-shifting analysis set forth in *McDonnell Douglas*. *Broich v. Incorporated Village of Southampton*, 462 Fed. Appx. 39, 42 (2d Cir. 2012); *White v. Connecticut Dept. of Children and Families*, 544 F.Supp.2d 112, 118-19 (D. Conn. 2008). In order to establish a *prima facie* case of discrimination, Plaintiff must show:

> (1) that [s]he belonged to a protected class; (2) that [s]he was qualified for the position [s]he held; (3) that [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.

*Broich*, *supra*, 462 Fed. Appx. at 42; *White*, *supra*, 544 F.Supp.2d at 118; *see also Jackson v. AFSCME Local 196,* 2010 WL 1286771 at *4 (D. Conn. March 29, 2010) (*Hall, J.*) ("[I]n the context of an employment discrimination case, a section 1981 claim requires proof of the same elements that constitute a Title VII claim."). If a claimant successfully establishes a *prima facie* case of discrimination, the responding party may rebut that showing by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant articulates a nondiscriminatory reason for the adverse employment action, the

burden shifts back to the claimant to "come forward with evidence that the [defendant's] proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Id.* at 43.

The District Court properly concluded that Plaintiff failed to meet the four element of a *prima facie* case of race discrimination because her termination did not occur under circumstances giving rise to an inference of discrimination. In her Opposition to the Motion for Summary Judgment, Plaintiff raised four different arguments in support of her claim that her termination occurred under circumstances raising an inference of discrimination, each of which the District Court addressed and properly rejected. Plaintiff has not provided any explanation why this Court should reach a different conclusion.

*First*, the District Court properly rejected Plaintiff's claim that Defendant's use of ZONAR was used to target her for harassment by changing her sign-in time to make it look as though she was late to work and terminating her for her lateness. (SA 38) The District Court reasoned that this argument failed because Plaintiff was not terminated for attendance issues. *Id.* Instead, Plaintiff was terminated as a result of her poor performance on October 25, 2017, when she committed numerous violations of Defendant's policies, including failing to complete a pre-trip inspection of the bus, putting the bus in reverse without beeping the horn, failing to perform a child check procedure, leaving the key in the ignition after leaving the bus and going

12

to the police station to make a police report while on work time without seeking permission to do so. (SA 005) Indeed, the video obtained by Defendant from Plaintiff's bus evidenced these numerous policy violations. *Id.*

In addition, the District Court reasoned that Plaintiff failed to present any evidence that Defendant manipulated ZONAR to alter her attendance records. (JA 42) The District Court also found that there was no indication that the use of ZONAR was in any way related to Plaintiff's race, as Plaintiff failed to submit any evidence of a relation to her race. *Id.* Not only does Plaintiff fail to dispute or address this reasoning in her appellate brief, she offers no explanation regarding why this argument precluded summary judgment in Defendant's favor.

*Second*, Plaintiff pointed to an incident from January 2017 during which she was involved in a confrontation with a colleague as evidence of an inference of discrimination in connection with her termination. The District Court also properly rejected this argument. Plaintiff filed an incident report after her colleague allegedly started yelling at her saying "my nigga." (AA 38) The District Court held that Plaintiff presented no factual or legal basis connecting her termination to this incident and/or for imputing this comment by her colleague to Defendant as a basis for supporting an inference of discrimination. (AA 39) Again, Plaintiff did not address or dispute this reasoning in her appellate brief or explain why a different conclusion is warranted.

*Third*, the District Court similarly rejected Plaintiff's argument that her prior suspension in *2013* somehow demonstrated an inference of discrimination in connection with her termination four years later. (AA 40) At that time, Plaintiff had been suspended after refusing to proceed without a bus monitor while picking up children from school. As the District Court noted, there was no racial connotation to this incident, nor any logical connection between this incident and her termination, which occurred *four years later*. *Id.* Plaintiff did not address or dispute this reasoning in her brief either.

*Finally*, the District Court rejected Plaintiff's assertion that an inference of discrimination could be drawn because she was not given an opportunity to defend herself, that the investigation conducted by Defendant was faulty and that she was denied due process. (AA 40) As the District Court properly concluded, "this is not a due process case, nor a retaliation case. This is a race discrimination case. Plaintiff does not argue or even suggest anywhere in her briefing that the termination process is evidence from which an inference of racial discrimination could be drawn." *Id.*

After rejecting Plaintiff's arguments, the District Court concluded that,

> [Plaintiff] identifies no comparator who was afforded the opportunities she says he was denied. No rational jury, reading the evidence most favorable to Plaintiff, could infer racial discrimination based on the facts alleged. Therefore, Plaintiff's discrimination claims must fail because she has not presented any evidence to satisfy the fourth prong of a prima facie racial discrimination case.

(AA 40-41)

Plaintiff addressed this conclusion briefly in her appellate brief, asserting that she was discriminated against on the basis of her race based on disparate treatment because a Hispanic driver named Paul Rivera was able to obtain air brake training while Plaintiff was denied the same opportunity. Appellant's Brief, p. 49. The District Court addressed this argument specifically in its decision. First, the District Court noted that Defendant had argued that the denial of air brake training was not an adverse employment action and that Plaintiff had failed to respond to this argument in her Opposition to the Motion for Summary Judgment. (AA 34) Thus, the District Court properly concluded that Plaintiff had abandoned this claim. (AA 34-35) Nevertheless, the Court went on to determine that the denial of air brake training was not an adverse employment action because it did not change her employment and "did not even rise to a 'mere [inconvenience] or an alteration of job responsibilities. Nor has she established that these requests amount to some type of entitlement enjoyed by other employees of equal position. The evidence shows that air brake training was only afforded to trainers, which she admittedly is [not]." (AA 35-36) Indeed, Plaintiff stated that she wanted the air brake endorsement because it would have created more economic opportunities for her *outside of First Student*. (SA 005, ¶ 5) Thus, Plaintiff does not claim that she required this training to advance her career with First Student. Under these circumstances, denial of the air brake training cannot constitute an adverse employment action.

15

In her appeal, Plaintiff simply noted the name of the driver who was allegedly given the opportunity to train on air brakes and reiterated that she initially was denied the opportunity to train on air brakes while this Hispanic driver was granted the opportunity to take the training.[6]  Appellant's Brief, p. 49. She did not address or contest the Court's conclusion that the denial of air brake training was not an adverse employment action.   Thus, she has not pointed to any reason for the Court's conclusion to be challenged.

Simply put, the District Court properly granted summary judgment on Plaintiff's Title VII and § 1981 discrimination claims, and Plaintiff has failed to explain why this Court should reach a different result.   Indeed, Plaintiff has failed to point to a dispute of any genuine issues of material fact or any reason why Defendant is not entitled to judgment as a matter of law.  The record is replete with evidence that Plaintiff was terminated because of her poor performance on October 25, 2017, and that her termination was not in any way connected to her race.  Thus, the District Court's decision should be affirmed.

C.   <u>Plaintiff's arguments on appeal regarding violation of the CBA and retaliation are meritless, and, even if the arguments are meritorious, Plaintiff should be precluded from raising them for the first time on appeal.</u>

---

[6] It also bears emphasis that Plaintiff was, in fact, granted the ability to take the test for the air brake endorsement.  (SA 002, ¶ 6)

Notably, in her appellate brief, Plaintiff did not actually address the District Court's rationale for granting summary judgment but instead raised additional issues not previously raised in her underlying opposition to the motion for summary judgment. It is axiomatic that Plaintiff cannot raise arguments for the first time on appeal. *Vintero Corp. v. Corporacion Venezolana de Fomento*, 675 F.2d 513, 515 (2d Cir. 1982) (quoting *Schwimmer v. Sony Corp. of America*, 637 F.2d 41, 49 (2d Cir. 1980) (holding a party who failed to raise an issue in its pleadings or motion papers was precluded from raising it for the first time on appeal)). Indeed, it is a "well-established general rule that an appellate court will not consider an issue raised for the first time." *Harrison v. Republic of Sudan*, 838 F.3d 86, 96 (2d Cir. 2016). Thus, the Court should not even consider Plaintiff's arguments regarding a violation of the CBA and/or retaliation. However, in an excess of caution, Defendant will address the substance of each in turn.

> i. *Plaintiff's claim that her termination was improper and in violation of the collective bargaining agreement is preempted by federal law.*

First, Plaintiff argues essentially that the reasons set forth by Defendant for her termination in the termination letter are not accurate[7]. *See* Appellant's Brief, pp.

---

[7] Even if the Court does consider these arguments on the merits, Plaintiff's belief that Defendant's investigation into the October 25, 2017 incident was flawed cannot preclude summary judgment. Indeed, even if Defendant's investigation into Plaintiff's conduct turns out to be faulty, it had a good faith belief that she committed

17

24-33.  As noted, Plaintiff did not previously raise this argument in her Opposition

to the Motion for Summary Judgment, and thus it should not be considered.   In

addition, this argument is actually a claim that Plaintiff was terminated improperly

in violation of the collective bargaining agreement ("CBA").   Indeed, Plaintiff

argues in her brief that, "the contract between first student and CSEA SEUI was

broadly overlooked and disregarded according (sic) with Plaintiff's opposition to the

defendant Motion for summary judgment. . . .  I was not able to enforce any of the

union contracts I was a part of."  Appellant's Brief, p. 12.  A claim that the CBA was

violated is preempted by the Labor Management Relations Act ("LMRA").

As courts within this circuit have held,

> Section 301 [of the Labor Management Relations Act] governs claims
> founded directly on rights created by collective-bargaining agreements,
> and also claims substantially dependent on analysis of a collective-
> bargaining agreement. . . . [W]hen resolution of a state-law claim is
> substantially dependent upon analysis of the terms of an agreement

numerous policy violations, including safety violations, based on the investigation
it conducted.  Therefore, Plaintiff's disagreement with Defendant's findings does
not suffice to defeat summary judgment. *Macoas Soto v. Core–Mark Int'l, Inc*., 521
F.3d 837, 842 (8th Cir.2008) (finding plaintiff's own deposition testimony "does not
create a factual dispute about the employer's good faith belief he was sleeping on the
job nor does it in any other way call into question the employer's stated reason for
terminating him"); *see also Brady v. Office of the Sergeant of Arms*, 520 F.3d 490,
496 (D.C. Cir. 2008) (question is whether employer "honestly and reasonably"
believed incident occurred, not whether it actually occurred); *Michael v. Caterpillar
Fin. Servs. Corp*., 496 F.3d 584, 598 (6th Cir. 2007) ("[The employee's]
disagreement with the facts uncovered in [the employer's] investigation does not
create a genuine issue of material fact that would defeat summary judgment as long
as an employer has an honest belief in its proffered nondiscriminatory reason.")
(internal quotation marks omitted).

made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law. . . . Before bringing such an action, the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement.

*Zeyer v. Board of Educ.*, 98 F.Supp.3d 425, 436 (D. Conn. 2015) (citations omitted; internal quotation marks omitted); *see also Vera v. Saks*, 335 F.3d 109, 119 (2d Cir. 2003) ("A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance . . . This complaint should have been dismissed for failure to make use of the grievance procedure established in the Collective Bargaining Agreement, or dismissed as pre-empted by § 301."), *citing Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220–21, (1985).

To the extent that Plaintiff is attempting to pursue a claim for the breach of a CBA provision, such a claim is preempted by federal law and should have been pursued through the grievance process. Thus, this argument must fail.

### ii. *Plaintiff's arguments regarding retaliation are irrelevant given the fact that she failed to assert a claim for retaliation.*

Plaintiff devotes a significant portion of her brief to attempting to argue and analyze why her termination was in retaliation for her having filed a police report

about the incident leading to her termination and/or because she had pending litigation against the City of New Haven. *See* Appellant's Brief, pp. 34-44. However, Plaintiff did not assert a claim for retaliation in the operative complaint. Thus, any argument as to why her termination was retaliatory is irrelevant here, as entirely new causes of actions cannot be raised for the first time on appeal. *Harrison v. Republic of Sudan*, *supra*, 838 F.3d at 96. As noted by the District Court, this is not "a retaliation case. This is a race discrimination case." (AA 40)

## CONCLUSION

For the foregoing reasons, the District Court's decision granting summary judgment in favor of Defendant on all remaining claims should be affirmed.

Dated:    New Haven, Connecticut
           September 6, 2022

                        Respectfully Submitted,
                        LITTLER MENDELSON, P.C.

                        */s/ Maura A. Mastrony*
                        Maura A. Mastrony (CT27787)
                        One Century Tower
                        265 Church Street, Suite 300
                        New Haven, CT 06510
                        (T)  203.974.8700
                        (F)  203.974.8799
                        *Attorney for Defendant-Appellee*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5268 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14 point Times New Roman.

Dated:      New Haven, Connecticut
              September 6, 2022

*/s/ Maura A. Mastrony*
Maura A. Mastrony

# CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2022, a copy of the foregoing Brief was filed electronically through the Court's CM/ECF system. A copy was also sent on September 6, 2022 via overnight delivery to the following:

Miss Torrey Terrial Townsend
39 Orchard Place
New Haven, CT 06511

Additionally, I hereby certify that on September 6, 2022, six (6) copies of the foregoing were dispatched to Federal Express for overnight delivery to the following:

Clerk's Office
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

*/s/ Maura A. Mastrony*
Maura A. Mastrony